If the counsel for the next case are in the courtroom, you should know we're going to take a break after this case before we take up the next case. I'm Joshua Gordon. I represent Joseph Davis. What the police have here is a car with no driver, illegally parked, but safely in a parking zone. The police looked at the Hampton Beach Inventory Policy for guidance on whether to impound, and they found three possible clauses. One requires illegal parking plus a hazard, but here there's no hazard because the car presents no more hazard than if it were parked in a different direction. The other two clauses give the police unbridled total discretion. They can tow whenever there are orders of a department member, but that just means when I say so. There's no guidance whatsoever. It's circular. When a cop orders it, it becomes under orders. Well, if you have a car, as you had here, parked illegally, as I recall the evidence, the car was parallel to the curb, covering two parking spots. In a handicapped spot. In a handicapped spot. It had come up without lights and sort of abandoned quickly. Doesn't that make a difference? The cop obviously is not going to leave the car there, and if there's nobody to pick up the car and drive it away, no friend saying I'm willing to do this, they typically do an inventory search, do they not? Well, no, I take issue with the word obviously. The police can clearly leave it there, illegally parked. They can picket it, and they knew that the owner was close to the vicinity. In Hampton Beach, that's a fact. Parking, as we both probably know, is limited there. Wouldn't that be something which would make a reasonable police officer determine whether you should leave the car there or take it away? Well, yes and no. Parking wasn't limited at the time. There are plenty of open spaces, but what Bertine and Wells tell us is that what makes an inventory search, inventory policy constitutional is the absence of discretion. Can you read our Boudreaux opinion? Yes. From Judge Torea. All right, so the constitutional question is a reasonableness question. What was unreasonable about what the police did? You may disagree that it was hazardous, but other people looking at this situation could easily conclude that the car needed to be removed. There are two. Do you concede that the question is the reasonableness of what the officers did under Boudreaux? No. And the reason why is that Bertine and Wells require no discretion from the police. And here there were two obvious. So Boudreaux is wrongly decided? I don't think so, Your Honor. But here there were two. Why not? Because that's your position. Because there were two obvious solutions to the situation here. This isn't like Kocha, for instance, where there was only one solution was to tow the car. Here there were two solutions. They can leave it there and ticket it. Or they knew the owner was in the vicinity, and so they just have to wait until she comes by and picks up her car. On a Saturday night in Hampton Beach, they're supposed to wait for 45 minutes to an hour for her to show up? No, they just abandon the car. The police can just walk away. What, with the car keys? They take them to the station, and that's why impoundment here looks a lot like pretext, because the police had an easy solution. And they don't want to tow the car, and they said so, and so they could have just walked away. What I'm trying to figure out with your argument is that it's pretextual in the sense that you can prove that they had no community caretaking motive for what they did, or whether you're trying to say that objectively, even without evidence of them having been proven to have the intent to investigate all along and not have had any community caretaking function, we could determine that it was pretextual. Which are you arguing? No, I think that because the inventory policy doesn't tell the police what to do, it leaves it wide open in their discretion. And so therefore, they don't have the guidance that Bertine and Wells require them to have. So why are they doing this thing? They say, and the court below agreed, that they were doing it for community caretaking function. I'm not talking about, to be clear though, I'm not talking about the reaching in and putting the keys in the ignition. I'm talking about backing way up. They had a community caretaking function to impound the car. No, they didn't. No, I'm saying the court was of a different view than you on that question. So you need to provide a reason to flip that decision, right? So for some reason, when a court of appeals, which was not there listening to everything, can decide the district court was wrong in assessing that the officer should be believed that they were impounding the car for community caretaking function. What in the record would suggest that? Because the court said illegal or hazard, and it's not. It's and hazard. And there's no objective or subjective, really, basis on which to say this is a hazard. The car was in a parking spot. It was sideways, but it was in a legal parking spot. It presented no more danger. But I thought you said you could ticket it. They could ticket it. But that must mean it's not parked legally. It's not legal, but it's not a hazard. But that's your opinion. Well, it's in a parking area. How can it be a hazard if it's in a designated parking area? It's not an opinion. It's what's on the lines on the ground. It is a hazard to the handicapped people who would have liked to have parked their car there, but they couldn't because your client's car was parked there, and they are forced then to find another parking space when, in fact, the state has attempted to protect them. That's not what they said. They're just having to do that. That is a reasonable presumption, but it's not what the police said. They said nothing about handicap. But it was a handicap. It was a handicapped spot, clearly illegally parked, but didn't pose a hazard. The hazard that the police suggested was that if a drunk driver swiped it. But it's in a parking space, so why would it be any more or less a hazard than a car parked perpendicular? Are you going to argue the keys? No. I would like to turn to sufficiency, if I may. Okay. For guilt, the government has to prove that the defendant knew the gun was in easy reach and had intention to have dominion and control over it. But as the trial court said in her finding, quote, you were in a car that was not yours for a very short time, where a gun was later located, and the gun was not your gun and could not be seen by three very sober police officers. And I'll add, all three of whom had flashlights shining in the car for quite some time. And the only information added when Mr. Davis testified was at the station. And he said, if there's a gun in the car, it's my wife because she has a permit, but I don't really know about any gun in the car. And that was no lie. Mr. Davis, a felon, would know better than to boast to the police that he had a gun permit, which he clearly could not have ever attained because he's a felon. So even if the officers were consistent about what Mr. Davis said at the station, and they were not, the court turned what he said into a lie and determined, therefore, that Davis had no credibility. And thus disbelieved him on the ultimate issue that he didn't know about the gun in the car. And you, of course, know the standard of review of credibility determinations. I understand. Which eventually dictates that we have to reject your attack on the judge's credibility finding. But the judge based her credibility finding on something that could not possibly be true. No, no, it could. He could, in a panic, be giving different stories at different times, which is at least one reasonable way to read this record. Thank you. Thank you, Your Honor. I see my time is up. Thank you. Good morning. Seth Afran for the United States. I will start with the impoundment issue. I think the court correctly says that the standard here is a question of reasonableness, and then this court has gone on to say that the case law supports the view that when a driver is arrested and there's no one on hand to take possession of the car, that impoundment is a reasonable choice before we even get to the question of hazard. So that happened here. The defendant was arrested for driving while intoxicated. The police actually did try to see if someone was on hand to take possession. Two men stepped forward to say they were friends of the defendant. The police offered them the chance to take possession of the car. They refused. The owner of the car was nowhere around. And so you had the defendant being taken away and no one taking possession of the car. That alone under this court's precedent is sufficient to impound the car. Beyond that, this car was in a place where it would be reasonable to not want it there. Judge Lynch, I think, correctly pointed out what I was thinking, which is a handicapped person very well could want to park in that spot. That's a hazard. I'll point another one. If a car is parked correctly into the space, there's a much smaller surface area for a drunk driver or a bad driver to hit. If the car is in the parallel position, that surface area is much larger. So the police could certainly conclude it's not a good idea after midnight on July 4th weekend at Hampton Beach to leave that car where it's more vulnerable to being hit than if it were parked correctly. We don't have to find all these things, but any of these things make the decision reasonable. The Supreme Court pointed out that when making this determination, it's not a question of was there something else the police could have done. The question is, was this a reasonable thing to have done? And I think that on these facts and under this court's authority, it is. If there are no questions on that, I'll turn to… I just think it's strange about the case. The gun is not found when they do the original inventory search? Yeah, so as I understand it, it is lodged between the seat and the console, so a little bit down. Now that suggests to me it wasn't the greatest inventory search ever done. It just seems like an extremely bad one because when they're not searching at all, he's just putting the keys in the car, suddenly the gun turns up. When he's doing a full-on inventory search, you can't find the gun? The facts are as you say they are. What I take it to mean, to rationalize what happened, is that when he went in to reach in to put the keys in the ignition, it provided the angle where he saw down there, but I wouldn't say that's… That's what I put to the facts. I mean, it doesn't go into enough detail for us to make that conclusion. I mean, it doesn't say that per se. That's an inference that I've drawn. But you're right to say that on the initial inventory search, the gun was not found. It was found when he went in to put the keys in the ignition. And are the cups…this may not matter, but the cups are near where the gun was found? Near the console area, in sort of open area. And sort of like, as I understood it, on the console, the bandana was taken… the defendant took off the bandana, covered the cups, also covered that chasm where the gun was. So you would have thought in the inventory search they would have removed the bandana? I think he did, but didn't see the gun. So it wasn't there. Yeah, that's right. But in any event, the question here, just to turn it back to the legal standard, is that would all be clearly erroneous because that's going to… was he rummaging around for evidence of a further crime? Judge DeClerico found no. I think that makes sense in many ways, but one of them is there was no reason to be rummaging. I mean, the investigation, there was no evidence of a gun. Nobody was talking about a gun. The evidence was drunk driving. On the initial entry to the car, they took possession of everything that was in plain view that related to drunk driving. The cups, the Hennessy bottle, those things were already taken possession. So to the extent they needed to do a successful drunk driving investigation and seize that evidence, they already did. There was nothing when you get up to that point of the officer going back into the car to say, oh, and someone told me about a gun. I might be looking for that, too. That just isn't there. Well, the officers did the obvious. They looked at what was in plain view. Yes. And they thought they had a drunk driver, and that's what they did. And that's fine, but what I'm saying is there's nothing… Judge DeClerico's notion that this isn't pretextual for something else is… It's not for an inventory search. You're not just taking inventory of the thing that connects to a crime that you're not supposed to be investigating. You're allowed to possess what's in plain view. You're supposed to inventory everything else. They did inventory some items, and he missed the gun. I've explained to you a theory as to why. As to the trial evidence itself, I think there are several pieces of evidence. An important one is the inference could be drawn that the defendant was trying to hide the gun. While the police were interacting with him, he kept dropping his hands to the area of the gun. He put the bandana over the gun. There are alternative explanations for that, but that's not what this court does on this kind of review. The government doesn't need to disprove every other possible theory. Hiding the gun is one piece of evidence. Another piece of evidence are the changing stories that the defendant seemed to take… suggest he knew the gun was there at the police station, said the exact opposite at the trial. Under our case law and the relevant case law, what's the right framework in your understanding for the officer going back in to put the keys in the car? Is that community care taking? Yes, under South Dakota, I think it's Offerman, has a role to make sure that the property is appropriately secured and that the defendant's property is protected. He was in a situation where the car is going to be towed, he's holding the keys. There are multiple choices he could make. Choice one, keep the keys himself. Choice two, hand the keys to the tow truck operator. Choice three, put the keys in the car so they stay in the ignition and that's where they're left. That's the one that he chose because that was for purposes of preserving the defendant's property. You may have chosen, any of us may have chosen a different one of those three, but I wouldn't say that one is an unreasonable choice. And because Judge DeClerico said that's why he did it, I think that brings it within the framework. Does the defendant make an argument below that the reason he went back in that second time was investigative rather than community care taking? That is the argument. And DeClerico, Judge DeClerico found that it was care taking and rejected the idea that it was an investigative purpose that second time? Yes. Once the car had gotten to the police station, they would have done another search, correct? Of the car? Once it was towed, they had done another search? Not if they, well, if they had done an inventory search at the scene, I doubt it. You doubt it, okay. I don't think so. If there are no further questions, the government will rest on this brief. Thank you. Okay, thank you. Okay, we're going to take a brief.